UNITED STATES DISTRICT COURT

Northern District of California

| | |
|---|---|
| KIMBERLY LUONG, et al.,<br><br>　　　　　Plaintiffs,<br>　v.<br>CITY & COUNTY OF SAN FRANCISCO, et al.,<br><br>　　　　　Defendants.<br>_____/ | No. C11-5661 MEJ<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 23 |

## I. INTRODUCTION

In this lawsuit, Plaintiffs Kimberly (Kim) Luong, Vicky Luong, and Rocky Luong[1] (who is Kim and Vicky's father) assert that Defendants City and County of San Francisco (City), San Francisco Police Department (SFPD), SFPD Chief of Police Greg Suhr, and five SFPD police officers — Alberto Ciudad, Gary Moriyama, Thomas Haymond, Sophal Chea, and Robert Duffield (Officers) — violated Plaintiffs' rights under both federal and state law. Second Amended Complaint (SAC), Dkt. No. 21. Defendants now move for summary judgment (Motion, Dkt. No. 23), arguing that each of Plaintiffs' claims fail as a matter of law. Plaintiffs have filed an Opposition (Opp., Dkt. No. 26) to this Motion, to which Defendants have replied (Reply, Dkt. No. 27). Having carefully considered all of the papers submitted by the parties and the arguments of counsel, the Court hereby GRANTS IN PART and DENIES IN PART Defendants' Motion for the reasons explained below.

---

[1] For the purpose of clarity, the Court occasionally refers to individuals by their first names.

## II. BACKGROUND[2]

On November 14, 2010, a cable car operator suffered life threatening injuries when he was stabbed several times near Mason Street and Jackson Street in San Francisco. The suspect — later identified as George Luong (Rocky's son and Kim and Vicky's brother) — fled on foot to a nearby alley street called Himmelman Place, where he lived in an apartment with his family. SFPD Officers responded to the crime scene and were quickly alerted by witnesses to the apartment.[3]

Officers knocked on the front door, identified themselves, and demanded entrance. Neither Kim, George, or their mother (who were all inside) opened the door. After obtaining permission by radio from their supervisor Sergeant Haymond, Officers broke down the door and entered the apartment. George then immediately announced that he would cooperate and came out to the front porch, where he was arrested. Kim, who was recording the incident with a camcorder, was asked by an Officer why she did not open the door. She replied that she was scared. One of the Officers walked through the apartment and commented that there was a bucket inside which appeared to contain a t-shirt covered in blood. Officers then ordered Kim and her mother to leave the apartment.

Kim and her mother joined Rocky and Vicky, who had been waiting outside of the apartment while George was detained. Plaintiffs, who were still recording the ongoing events, were told by an

---

[2] The Court provides this brief summary of the case for background purposes only. Because the parties failed to provide a joint statement of facts with the filing of Defendants' Motion, the Court ordered the parties to submit a joint statement along with Defendants' Reply. Dkt. No. 25. The parties complied, and this background section is based on that joint statement of facts (JSF, Dkt. No. 29) as well as the Court's review of the record in this matter, including the two videos of the incident: Plaintiffs' video (Declaration of Margaret Baumgartner [Baumgartner Decl.], Dkt. No. 24, Ex. A) and a video from a neighbor (Baumgartner Decl., Ex. B). In the analysis section of this Order, the Court provides citations to the facts that are at issue in this dispute when they are material to the disposition of Defendants' Motion. The parties had a chance at oral argument to object to any of the facts discussed in this Order, and they did not do so.

[3] The Court only specifically identifies an Officer when it is material to the analysis of Defendants' Motion. This does not occur frequently, mainly because Defendants attack Plaintiffs' claims jointly against all Officers rather than breaking them down by individual Officers (with an exception for the claims against Duffield). The Court notes that some police officers involved in this incident were not named as defendants in Plaintiffs' lawsuit.

UNITED STATES DISTRICT COURT
For the Northern District of California

Officer that they could not use the camcorder because it was a crime scene. The Officer also motioned for them to move down the alley to the main street, and Plaintiffs started to walk in that direction. Two different Officers then informed Plaintiffs that they would have to seize the camcorder as evidence. Plaintiffs refused to give up the camcorder, expressing in an indirect way that they had rights since George was a family member, and that the camcorder could be obtained at a later time from their lawyer.

A handcuffed George was then escorted by Officers down the alley and past Plaintiffs, who were still recording, to a patrol car. An Officer refocused his attention to Plaintiffs and asked them whether they saw what had transpired earlier. Moments later, an individual off-camera is heard saying "you know what, excuse me," which is followed by an Officer physically attempting to take the camcorder away from Plaintiffs. In the ensuing scuffle — the exact details of which both parties dispute — Officers used force to take possession of Plaintiffs' camcorder and detain each of them. During the struggle, each Plaintiff was in possession of the camcorder for a brief moment before the Officers were able to seize it. All three Plaintiffs were eventually handcuffed and arrested. Rocky and Vicky were cited under California Penal Code § 148 (Section 148) for resisting and delaying police officers in the execution of their duties. Kim was cited under California Penal Code § 243 (Section 243) for battery on a police officer.[4]

Based on the above events, Plaintiffs filed a Complaint against Defendants in San Francisco County Superior Court on September 15, 2011. Dkt. No. 1, Ex. A. Defendants then removed the lawsuit to this Court on November 22, 2011. Dkt. No. 1. The 12 claims asserted by Plaintiffs mostly stem from their allegation that Defendants used excessive force to unlawfully arrest them. The specific claims, delineated in Plaintiffs' SAC that was filed on July 17, 2012, are as follows: (1) a 42 U.S.C. § 1983 (Section 1983) claim against the Officers for violating Plaintiffs' constitutional rights under the First, Fourth, and Fourteenth Amendments; (2) a Section 1983 municipal claim against the City based on the same allegations as the first claim and pursuant to *Monell v.*

---

[4] In a supplemental declaration filed after the close of briefing, Kim testifies that she never struck an Officer during the incident. *See* Dkt. Nos. 30 and 31.

*Department of Social Services of City of New York*, 436 U.S. 658 (1978); (3) a 42 U.S.C. § 1981 (Section 1981) claim against the Officers for violating Plaintiffs' constitutional rights on account of their race; (4) a California Civil Code § 51.7 (Section 51.7) claim against the Officers based on the same allegations as the third claim; (5) an assault claim against the City and the Officers; (6) a battery claim against the City and the Officers; (7) an intentional infliction of emotional distress (IIED) claim against the City and the Officers; (8) a negligence claim against the City and the Officers; (9) a Section 1983 municipal claim against the City and Suhr for negligent selection, training, retention, supervision, investigation, and discipline of the Officers; (10) a California Civil Code § 52.1 (Section 52.1) claim against the City and the Officers; (11) a claim for injunctive and declaratory relief; and (12) a false imprisonment/false arrest claim against the City and the Officers. In their Motion, Defendants move to dismiss each of these claims.

## III.  LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate only when there is no genuine dispute of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party bears both the initial burden of production as well as the ultimate burden of persuasion to demonstrate that no genuine dispute of material fact remains. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party meets its initial burden, the nonmoving party is required "to go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotations and citations omitted). On summary judgment, courts are required to view the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If a reasonable jury could return a verdict in favor of the nonmoving party, summary judgment is inappropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## IV.  ANALYSIS

In their Opposition, Plaintiffs first note that they are withdrawing their Section 1983 *Monell*

4

1 claims against the municipal Defendants. Opp. at 1, fn. 2. Plaintiffs also do not oppose Defendants'
2 Motion on the following: (1) the Section 1981 claim; (2) the Section 51.7 claim; (3) the injunctive
3 and declaratory relief claim; and (4) that there is no evidence to support that Duffield was present
4 during the incident or used any force. Accordingly, Defendants' Motion with respect to Duffield
5 and each of the above claims is GRANTED. The Court discusses the merits of Plaintiffs' seven
6 remaining claims against Defendants in turn below, focusing first on the crux of Defendants'
7 Motion: that Plaintiffs' Section 1983 claims against the Officers for excessive force and unlawful
8 arrest fail as a matter of law.

9 A. Section 1983 Claim for Excessive Force

10 Pursuant to the Fourth Amendment, police officers may only use such force as is
11 "objectively reasonable" under the circumstances. *Graham v. Connor*, 490 U.S. 386, 397 (1989).
12 To determine whether the Officers' use of force was reasonable in this matter, this Court must
13 balance the "nature and quality of the intrusion on a person's liberty with the countervailing
14 governmental interests at stake." *Davis v. City of Las Vegas*, 478 F.3d 1048, 1054 (9th Cir. 2007)
15 (internal quotations and citations omitted). This balancing requires the Court to "assess the quantum
16 of force used" and then "measure the governmental interests at stake" by considering "(1) the
17 severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the
18 officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by
19 flight." *Id.* (internal quotations and citations omitted). Since cases involving police misconduct
20 almost always involve disputed facts and turn on credibility determinations, the Ninth Circuit has
21 "held on many occasions that summary judgment or judgment as a matter of law in excessive force
22 cases should be granted sparingly." *Drummond v. City of Anaheim*, 343 F.3d 1052, 1056 (9th Cir.
23 2003).

24 The Ninth Circuit's warning in *Drummond* that summary judgment in excessive force cases
25 should be granted sparingly aptly applies to Kim and Vicky's claims in this matter. In their Motion,
26 Defendants argue that the "Officers did not use pepper spray or their batons, or cause any serious
27 injury to Plaintiffs," but, rather, only "pushed Kimberly and Vicky away when they attempted to
28

1 interfere, and then held them while they continued to resist, resulting in a few scrapes and bruises."
2 Motion at 9-10. According to Defendants, this constituted a reasonable use of force, and, even if it
3 did not, they are "entitled to qualified immunity because none of their alleged actions violated
4 clearly established law." *Id.* at 10.[5]

5 Defendants' argument on this issue may have been persuasive if the record did not contain
6 evidence of some more slightly unreasonable conduct on the part of the Officers (and not just
7 pushing and holding Kim and Vicky while they allegedly resisted, like Defendants argue above).
8 Kim has testified that while she was prone, handcuffed, and trying to look around, one Officer put a
9 knee on her head for 30 seconds and another Officer purposefully stepped on her ankle for five to
10 ten seconds.[6] JSF ¶ 39. During his deposition, Rocky testified that one of the Officers slapped Kim
11 in the back of her head, causing her to fall down. Declaration of Panos Lagos (Lagos Decl.), Dkt.
12 No. 26-2, Ex. 2 at 61 ("No, [the Officer] also — he also gave a very big slap in the back of the head
13 of my daughter and made her fall down."). Vicky testified that she saw an Officer use his fist while
14 detaining Kim. *Id.*, Ex. 3 at 70. Plaintiffs have also provided photographs, which were taken on the
15 day after the incident, that show Kim suffered severe bruising to her arms, and her ankle was visibly
16 swollen and bruised. *Id.*, Ex. 14.

17 With respect to Vicky, evidence has been submitted that some Officers pushed her head,
18 shook her real hard, and then threw her across the street. JSF ¶¶ 48, 49. Specifically, Vicky testified
19 as follows: "I was — I was thrown. And then next thing I felt was the wall on my right arm, which

20

21 [5] "Qualified immunity shields government officials from liability provided that 'their
22 conduct does not violate clearly established statutory or constitutional rights of which a reasonable
person would have known.'" *Reza v. Pearce*, 2011 WL 5024265, at *1 (D. Ariz. Oct. 21, 2011)
23 (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). In determining whether qualified
immunity applies, the Court must consider (1) whether the alleged facts "make out a
24 violation of a constitutional right," and (2) if so, whether the right "was 'clearly established' at the
time of defendant's alleged misconduct." *Pearson*, 555 U.S. at 232. The Court may consider these
25 two steps in any order. *Id*. at 236.

26
[6] Although not material to Kim's excessive force claim, the Court notes that the Officer who
27 intentionally stepped on her ankle had a "satisfied look" on his face when doing so, and another
Officer screamed "she's stupid!" while Kim was on the ground getting handcuffed. JSF ¶¶ 40, 41.
28

UNITED STATES DISTRICT COURT
For the Northern District of California

1  — and then I felt the rest of my body just go into the wall and then bounce back." Lagos Decl., Ex.
2  3 at 74.  Kim described the use of force against her sister like this: "And then they flung her, and
3  then that's when I look up and I actually see her body just get thrown. . . . I mean, it's like —
4  because it's like, she just tumbled all the way to the wall." *Id.*, Ex. 1 at 79-80.  When asked whether
5  Vicky's body actually rotated, Kim responded in the affirmative, explaining "It's like, it made at
6  least one whole rotation, and then it's like, if she didn't hit the wall, she might not have stopped."
7  *Id.* at 80.  The photographs of Vicky's injuries confirm that she also suffered severe bruising to her
8  arms and abrasions to her knees.  *Id.*, Ex. 14.

9  Based on the above testimony and evidence — which must be assumed as true and
10 interpreted in a light most favorable to Plaintiffs — the Court finds that it is possible for a rational
11 juror to conclude that the Officers' use of force was unreasonable.  If a juror believes that an Officer
12 purposefully stepped on Kim's ankle for ten seconds while she was laying face-down on the ground
13 and in handcuffs (i.e., she was not resisting so she was not a threat to others nor a flight risk), then
14 that juror may reasonably conclude that this constitutes excessive force, especially considering she
15 was not a suspect in a violent crime.  Such conduct, if true, also cannot be considered a mistake in
16 judgment since reasonable police officers would know that purposefully stepping on a detainee's
17 ankle violates established law, which means the Officers are not entitled to qualified immunity under
18 these circumstances.[7]

19 A similar rationale applies to Vicky's excessive force claim.  While there is more room to
20 argue here that the Officers' use of force was an appropriate response to Vicky's alleged resistance,

---

[7] Moreover, qualified immunity is usually inappropriate when the Court finds there is a triable issue regarding whether police officers acted reasonably or used excessive force.  *See Santos v. Gates*, 287 F.3d 846, 855 n. 12 (9th Cir. 2002); *Fleming v. Clark*, 2010 WL 3516112, at *5 (N.D. Cal. Sept. 8, 2010) (denying summary judgment with respect to a qualified immunity defense on an excessive force claim because "there are several disputed issues of fact regarding the length of the search, the use of handcuffs and the use of guns, [so] the Court finds this issue inappropriate for disposition on summary judgment"); *Siwiec v. Thompson*, 2004 WL 2480516, at *11 (D. Or. Nov. 4, 2004) ("Because the record reveals this disputed issue of fact regarding a Fourth Amendment violation, and the right in question was clearly established at the time of Siwiec's arrest, Thompson enjoys no qualified immunity defense to the Second Claim.").

7

the Court cannot find that actually throwing a detainee against a wall is reasonable as a matter of law.  The Court would be more sympathetic to Defendants' position if the Officers' interactions with Vicky occurred inside her apartment, where the Officers were required to be particularly defensive since they were looking for a possibly armed murder suspect in an unfamiliar surrounding that may house dangerous accomplices.  But that is not the case.  When the Officers decided to forcefully seize the camcorder and detain Vicky, George had already been arrested and was sitting inside a patrol car.  The Officers outnumbered the Plaintiffs, were in an open and public space, and knew that Vicky was only a family member that was likely not involved in the earlier stabbing, making their decision to throw her against the wall just to retrieve the camcorder an issue that should be evaluated by a jury at trial.  *See Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991) ("Whether the amount of force used was reasonable is usually a question of fact to be determined by the jury.").  Due to these reasons, the Court finds that a genuine dispute of material fact remains on Kim and Vicky's Section 1983 excessive force claims, and Defendants' Motion on these claims is therefore DENIED.

Defendants' Motion, however, with respect to Rocky's excessive force claim is GRANTED.  Rocky concedes that the Officers did not use any force to detain him.  JSF ¶ 59.  His only complaint is that his handcuffs were too tight, which left a slight abrasion on his wrists.  JSF ¶¶ 59, 60.  Plaintiffs argue that the Ninth Circuit has held that overly-tight handcuffing claims sometimes raise a triable issue of fact.  But the cases cited by Plaintiffs are distinguishable.  In *Palmer v. Sanderson*, the plaintiff claimed that the handcuffs were so tight that they left bruises for several weeks, which is not the case here.  9 F.3d 1433, 1436 (9th Cir. 1993).  The plaintiff in *Alexander v. County of Los Angeles*, besides alleging that he was slammed against a car, claimed that the handcuffs caused his hands to become blue and swollen, and the latter condition remained nine months later at his deposition when he could not even make a fist.  64 F.3d 1315, 1323 (9th Cir. 1995).  This too is not analogous with Rocky's claim.  In *Wall v. County of Orange*, the plaintiff, unlike Rocky, claimed that he was picked up by his handcuffed arms and thrown "upside down" and head first into the patrol car.  364 F.3d 1107, 1109 (9th Cir. 2004).  Lastly, in *LaLonde v. County of Riverside*, the plaintiff was grabbed by his ponytail, knocked backwards, pepper sprayed, and then left to sit on a

couch with handcuffs that were too tight and pepper spray burning his eyes. 204 F.3d 947, 952 (9th Cir. 2000). The Ninth Circuit only reversed the district court's decision to grant the defendants' motion for judgment as a matter of law because the court completely ignored and never analyzed the overly-tight handcuffing claim, pointing out in dicta that such a claim may constitute excessive force under certain circumstances. *Id.* at 960.

The Court finds the reasoning in *Ha v. City of Liberty Lake* instructive on this issue. 2010 WL 4065491 (E.D. Wa. Oct. 15, 2010). *Ha* analyzed the Ninth Circuit's rulings on overly-tight handcuffing claims and explained that "*unreasonable* injury to a person's wrists using handcuffs constitutes excessive force," but "handcuffing is not excessively forceful unless supported by factual allegations detailing specific actions that caused specific injuries in the application of the handcuffs." *Id.* at *6 (emphasis in original). Here, Rocky's only evidence to support his excessive force claim is his testimony that the handcuffs were too tight and caused him a slight abrasion. Plaintiffs do not include any photographs to corroborate the severity of this slight abrasion or any other evidence indicating Rocky's injuries were unreasonable. The Court finds that Rocky's vague testimony is not enough to withstand summary judgment on this claim. *See Orsak v. Metro Airports Comm'n Airport Police Dept.*, 675 F.Supp.2d 944, 957 (D. Minn. 2009) ("The use of handcuffs, unlike the use of a taser, is a standard practice in nearly every arrest. To allow excessive force claims to survive summary judgment every time a plaintiff alleged that handcuffs were painful would disregard the inherent necessity of the use of handcuffs in the context of an arrest."). Accordingly, summary judgment is entered against Rocky's Section 1983 excessive force claim.[8]

---

[8] At the hearing, Plaintiffs argued that because the Ninth Circuit has held on previous occasions that overly-tight handcuffing claims raise triable issues of fact that are proper for a jury to evaluate, the Court should not base its decision to dismiss Rocky's excessive claim on a district court opinion from Minnesota. But the Court has distinguished the Ninth Circuit cases cited by Plaintiffs from the situation presented here. And, as explained above, the Court agrees with *Ha*, which analyzed Ninth Circuit law — not Minnesota law — on this issue to conclude that there needs to be evidence of specific and *unreasonable* injury for an overly-tight handcuffing claim to withstand summary judgment. 2010 WL 4065491, at *6. If the Court were to accept Plaintiffs' argument, all individuals who claimed that handcuffs were placed too tightly and left a slight abrasion would be automatically entitled to have a jury hear their claim. This would be problematic

9

B. <u>Section 1983 Claim for Unlawful Arrest</u>

A claim for unlawful arrest is cognizable under Section 1983 as a violation of the Fourth Amendment, provided that the arrest was without probable cause or other justification. *Dubner v. City and Cnty. of San Francisco*, 266 F.3d 959, 965 (9th Cir. 2001). "An arrest is supported by probable cause if, under the totality of circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the defendant] had committed a crime." *Beier v. City of Lewiston*, 354 F.3d 1058, 1065 (9th Cir. 2004) (internal quotations and citations omitted). Moreover, "[r]egardless of the reasons initially given for making an arrest, an arrest is valid as long as there is probable cause to arrest for any offense." *Davis v. Cnty. of San Bernardino*, 2009 WL 3838287, at *5 (C.D. Cal. Nov. 13, 2009) (citations omitted).

Defendants contend that they had probable cause to arrest Plaintiffs for violating Section 148 — which makes it a criminal offense to willfully resist, delay, or obstruct any police officer in the discharge of his duties — due to their refusal to comply with the Officers' instructions to give up the camcorder.[9] The Officers believed they were entitled to seize the camcorder since it could contain evidence pertinent to their investigation of the stabbing incident. In their Opposition, Plaintiffs argue that they had a First Amendment right to record George's arrest. *See, e.g.*, *Glik v. Cunniffe*, 655 F.3d 78, 82 (1st Cir. 2011) ("The filming of government officials engaged in their duties in a public place, including police officers performing their responsibilities, fits comfortably within [the First Amendment]."). But Defendants have never maintained that Plaintiffs were not entitled to record the incident. Rather, Defendants argue that the Officers had a right to take the camcorder because they had probable cause — based on the Officers' collective knowledge[9] — that it may

---

and therefore the Court finds that some evidence of unreasonable injury is required, which it finds Rocky has not presented here.

[9] Even though Kim was cited under Section 243 for battery against a police officer (and not under Section 148), Defendants are correct that the Officers can now lawfully base Kim's arrest on Section 148. *See, e.g.*, *Davis*, 2009 WL 3838287, at *5.

[9] To the extent that Plaintiffs argue that the Officers did not have probable cause to believe that the recording would have evidence of George's crime, this argument is denied. Based on their

contain evidence of George's crime, and they could do so without a warrant since any recording could have been destroyed by Plaintiffs if it was unfavorable to George.  Plaintiffs do not directly oppose this argument, and the Court finds that Defendants' position is correct.  *See, e.g.*, *Berglund v. City of Maplewood*, 173 F.Supp.2d 935, 943-44 (D. Minn. 2001) (finding that police officers had the right to seize a videotape because there was probable cause to believe that the tape contained evidence about a crime and there were exigent circumstances since the tape could easily be destroyed).

Because the Officers were entitled to seize the camcorder, their commands to Plaintiffs to give up the camcorder should have been obeyed.  When Plaintiffs failed to comply with the Officers' unequivocal instructions, the Officers developed probable cause to arrest them for violating Section 148 since they were willfully delaying and obstructing the Officers' duties.  *See, e.g.*, JSF §§ 20, 22, 25, 26.  Moreover, the Court finds that other conduct on the part of Plaintiffs provided the Officers with probable cause to arrest them under Section 148.  For instance, Kim did not open the front door when instructed to do so by the Officers.  JSF § 3.  She also told the Officers that nobody was inside the apartment even though her mother was still there.  JSF § 12;

---

collective knowledge, the Officers knew that Kim was recording inside of the apartment, where one Officer observed a bucket that contained a t-shirt covered in blood. JSF §§ 7, 9, 10.  At oral argument, Plaintiffs contended that for the collective knowledge doctrine to apply, such knowledge must actually be communicated.  According to Plaintiffs, there is consequently a triable issue with respect to whether the Officers that seized the camcorder learned from other Officers' communications that Kim had been recording inside the apartment.  The Ninth Circuit, however, has applied the collective knowledge doctrine even when there was no actual communication. *United States v. Ramirez*, 473 F.3d 1026, 1032 (9th Cir. 2007) ("At the same time, we have applied the collective knowledge doctrine 'regardless of whether [any] *information* [giving rise to probable cause] was actually communicated to' the officer conducting the stop, search, or arrest. *United States v. Bertrand*, 926 F.2d 838, 844 (9th Cir. 1991) (emphasis added); *see also United States v. Bernard*, 623 F.2d 551, 560-61 (9th Cir. 1980) (looking to collective knowledge 'even though some of the critical information had not been communicated to' the arresting officer); *Sutton*, 794 F.2d at 1426 (same).").  Moreover, even if the Court were to accept Plaintiffs' argument on this issue, the Court would still find that the Officers had probable cause to arrest them for the other reasons discussed later in this Order, to which Plaintiffs did not object at the hearing (e.g., Kim not opening the door and telling the Officers that nobody was inside, and each of the Plaintiffs putting forth some resistance when the Officers seized the camcorder).

11

Baumgartner Decl., Ex. A. Lastly, each Plaintiff put forth some resistance after the Officers' decided to physically seize the camcorder. JSF §§ 31, 32. Based on the above, the Court finds that no rational juror could conclude that the Officers' did not have probable cause to arrest each Plaintiff for violating Section 148. Defendants' Motion is therefore GRANTED, and summary judgment is entered on Plaintiffs' Section 1983 unlawful arrest claim.

C.  Section 52.1 Claim

Section 52.1 provides individuals with a private right of action if improper means (e.g., threats, intimidation, or coercion) are used to interfere with their civil rights. Defendants move for summary judgment on the Section 52.1 claim on the grounds that Plaintiffs fail to show that there were any threats, intimidation, or coercion not inherent in the alleged underlying constitutional violation, as required by a recent California Court of Appeal decision that specifically analyzed Section 52.1. Motion at 17 (citing *Shoyoye v. Cnty. of Los Angeles*, 203 Cal.App.4th 947, 959 (2012)). In their Opposition, Plaintiffs do not contend that such independent threats, intimidation, or coercion exist, and instead argue that the Court should not follow *Shoyoye* because it was not correctly decided, pointing to many cases before the *Shoyoye* decision as examples of supporting case law. Opp. at 20-25. The Court disagrees, and finds a recent decision from this District analyzing these parties' exact arguments instructive:

> Courts within California were split on whether the intimidation, threats or coercion required by the Act must be separate from the alleged underlying constitutional violation. *See, e.g., Haynes,* 2010 WL 2991732, at *6 (discussing the varying approaches courts have taken to this issue); *compare Knapps v. City of Oakland,* 647 F.Supp.2d 1129, 1168 (N.D. Cal. 2009) (finding the elements of a section 52.1 excessive force claim identical to a section 1983 excessive force claim) *with Gant v. County of Los Angeles,* 765 F.Supp.2d 1238, 1252–53 (C.D. Cal. 2011) (holding that a wrongful arrest and detention, without more, could not constitute "force, intimidation, or coercion" for purposes of Section 52.1).
>
> The California Court of Appeal, however, recently addressed this issue and held that "where coercion is inherent in the constitutional violation alleged ... the statutory requirement of 'threats, intimidation, or coercion' is not met. The statute requires a showing of coercion independent from the coercion inherent in the wrongful detention itself." *Shoyoye v. County of Los Angeles,* 203 Cal.App.4th 947, 959 [ ] (2012). This Court is bound by *Shoyoye* "unless there is convincing evidence that the California Supreme Court would hold otherwise." *Carvalho v. Equifax Info. Services, LLC,* 629 F.3d 876, 889 (9th Cir. 2010); *see also Alvarez v. Chevron Corp.,* 656 F.3d 925, 932 n. 7 (9th Cir. 2011) (holding that the federal court was bound by decision of the California Court of Appeal on issue of state law "because there is no California

12

>Supreme Court decision on point, and no indication that the California Supreme Court would disagree" with the Court of Appeal); *see also Archer v. City of Taft,* 2012 WL 3638064, at *10 (E.D. Cal. Aug. 22, 2012) (following *Shoyoye*).

*Hunter v. City and Cnty. of San Francisco*, 2012 WL 4831634, at *5 (N.D. Cal. Oct. 10, 2012); *see also Ervin v. City of Los Angeles*, 2012 WL 4758224 (C.D. Cal. Oct. 5, 2012) (following *Shoyoye* and holding that to "the extent that an alleged violation of a right is inherently coercive, that coercion is insufficient to meet the statutory requirements of Section 52.1, which requires a showing of an independent threat or coercive act.")).

Here, Plaintiffs have not persuaded the Court that the California Supreme Court would disagree with the recent decision of the California Court of Appeal. Accordingly, because Plaintiffs have not made a showing of independent coercion outside of their underlying constitutional claims, the Court follows *Shoyoye*, *Hunter*, *Archer*, and *Ervin* to hold that Plaintiffs' Section 52.1 claim is not actionable as a matter of law. Defendants' Motion on the Section 52.1 claim is therefore GRANTED.

D. <u>Remaining State Law Claims (Assault, Battery, Negligence, IIED, and False Arrest)</u>

Defendants argue that Plaintiffs' remaining state law claims fail as a matter of law "on the same basis as Plaintiffs' constitutional claims" since the Officers used reasonable force to lawfully arrest Plaintiffs. Motion at 18. But, as explained above, this Court finds that there is a genuine dispute of material fact with respect to Kim and Vicky's excessive force claim. Summary judgment would therefore be inappropriate for their corresponding state law claims (assault, battery, negligence, and IIED), and Defendants' Motion on these claims is therefore DENIED. However, because summary judgment was granted on Rocky's excessive force claim and Plaintiffs' unlawful arrest claim, the corresponding state law claims also fail as a matter of law. Defendants' Motion on these state law claims (false arrest and each of Rocky's state law claims) is consequently GRANTED.

In their Motion, Defendants also attack the IIED claim from Kim and Vicky because "they lack evidence of 'extreme and outrageous conduct' or that they suffer 'severe or extreme emotional distress.'" Motion at 18. This argument is DENIED. If a jury believes Plaintiffs' claims about the

13

Officers' conduct (i.e., purposefully stepping on Kim's ankle or throwing Vicky against the wall), the jury could reasonably find this to be extreme and outrageous conduct. And Kim and Vicky's deposition testimony shows that there is a triable issue with respect to the severity of their emotional distress. *See* JSF §§ 44, 58.

In the last sentence of the body of their Motion, Defendants point out that they "would be immune under California Government Code § 821.6 [Section 821.6] of the investigation or initiation of any criminal proceeding." Motion at 18. To the extent that Defendants intend to move for summary judgment on each of Plaintiffs' state law claims based on this one sentence immunity argument, the Court declines to consider such an undeveloped and curt position. Moreover, even if it were considered, this Court has previously held that Section 821.6 only immunizes public employees from malicious prosecution claims and not other tort claims. *See, e.g., Dinius v. Perdock*, 2012 WL 1925666, at *9 (N.D. Cal. May 24, 2012) ("The Court agrees with the California Supreme Court's decision in *Sullivan* and finds that Section 821.6 only applies to claims for malicious prosecution."); *Tucker v. City of Richmond*, 2012 WL 2571314, at *4-5 (N.D. Cal. July 2, 2012) (rejecting the defendants' arguments that Section 821.6 provides officers with immunity against the plaintiff's claims for false imprisonment, NIED, and IIED).

## V.  CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART. This case will proceed to trial on Kim and Vicky's Section 1983 excessive force claim and their state law claims for assault, battery, negligence, and IIED. Summary judgment is entered against each of Plaintiffs' other claims.

**IT IS SO ORDERED.**

Dated: November 19, 2012

Maria-Elena James
Chief United States Magistrate Judge