UNITED STATES DISTRICT COURT

Northern District of California

| | |
|---|---|
| KIMBERLY LUONG, VICKY LUONG, | No. C 11-05661 MEJ |
| Plaintiffs, | **ORDER DENYING PLAINTIFFS' MOTION FOR NEW TRIAL AND/OR TO ENTER JUDGMENT FOR PLAINTIFFS [Dkt. No. 86]** |
| v. | |
| SF CITY & COUNTY, *et al.*, | |
| Defendants. | |

## I. INTRODUCTION

Plaintiffs filed this lawsuit against the City and County of San Francisco, San Francisco Police Department, and San Francisco Police Officers Robert Duffield, Albern Cuidad, Sophal Chea, Gary Moriyama, and Sergeant Thomas Haymond, asserting that the Officers violated their Fourth Amendment rights by using excessive force to arrest them on November 14, 2010 in an alleyway outside of their apartment.[1] The case proceeded to a jury trial on March 25 through 29, 2013. After the Court granted Defendants' motion for directed verdict in part,[2] the remaining § 1983 excessive

---

[1] On November 19, 2012, the Court granted summary judgment in favor of Defendants on Plaintiffs': (1) *Monell* claim pursuant to 42 U.S.C. § 1983 against the municipal defendants; (2) claim under 42 U.S.C. § 1981; (3) claim under California Civil Code section 51.7; (4) § 1983 unlawful arrest claim; (5) claim under California Civil Code section 52.1; and (6) claims for declaratory and injunctive relief. Dkt. No. 35 at 4-5. The Court also granted judgment in favor of Ofc. Duffield on all counts. *Id*. at 5. The Court denied summary judgment on Plaintiffs' § 1983 excessive force claim and their state law claims for assault, battery, negligence, and intentional infliction of emotional distress. *Id*. at 14.

[2] In its Rule 50 Order, the Court granted judgment in favor of Ofc. Ciudad as to all claims, granted judgment in favor of Ofc. Moriyama as to Kimberly Luong's claims against him; and granted judgment in favor of Ofc. Chea as to all of Vicky's Luong's claims against him. Dkt. No.

1 force and intentional infliction of emotional distress claims were submitted to the jury. The jury
2 thereafter returned a verdict finding for the Officers on all counts. Specifically, the jury found that:
3 (1) neither Sgt. Haymond nor Ofc. Chea used excessive force against Kimberly Luong; (2) neither
4 Sgt. Haymond nor Ofc. Chea intentionally inflicted emotional distress on Kimberly Luong; (3)
5 neither Ofc. Moriyama nor Sgt. Thomas Haymond used excessive force against Vicky Luong; and (4)
6 neither Ofc. Moriyama nor Sgt. Haymond intentionally inflicted emotional distress on Vicky Luong.
7 Dkt. No. 83.

Plaintiffs now move for a new trial or for the Court to enter judgment in their favor pursuant to Federal Rule of Civil Procedure 59. Defendants oppose Plaintiffs' motion, arguing that Plaintiffs have failed to identify any basis to support vacating the verdict and retrying the case. Because the Court finds this matter suitable for resolution based on the parties' written submissions and that oral argument would not clarify any arguments, the Court **VACATES** the hearing set for May 30, 2013. Civ. L.R. 7-1(b). After carefully considering the parties' briefs and oral argument, the Court **DENIES** Plaintiffs' Motion in its entirety.

## II. LEGAL STANDARD

Pursuant to Rule 59(b), within 28 days after entry of judgment, a party may move for a new trial. Rule 59(a) authorizes the Court to grant a new trial on any or all issues "for any reason for which a new trial has heretofore been granted in an action at law in federal court . . . ." Fed. R. Civ. P. 59(a)(1)(a). Because "Rule 59 does not specify the grounds on which a motion for a new trial may be granted," courts are "bound by those grounds that have been historically recognized." *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1035 (9th Cir. 2003). The Ninth Circuit has held that the grounds on which a new trial may be granted include, but are not limited to: (1) a verdict that is contrary to the weight of the evidence; (2) a verdict that is based on false or perjurious evidence; or (3) to prevent a miscarriage of justice. *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (citation and quotation omitted).

---

79.

2

### III. DISCUSSION

Plaintiffs assert that they are entitled to a new trial on three grounds: (1) the verdict on the Fourth Amendment excessive force claims was against the weight of the evidence; (2) the verdict was based on perjurious testimony from Ofc. Moriyama; and (3) the verdict was a miscarriage of justice because of the Court's evidentiary rulings, rulings on jury instructions, and purported failure to notify Plaintiffs' counsel about a jury question.  The Court will address each ground in turn.

**A.     Plaintiffs Argue the Verdict is Against the Weight of the Evidence**

Plaintiffs first argue that the clear weight of evidence established that the Defendants used unnecessary force.  Mot. at 5.  Thus, Plaintiffs argue that the jury's verdict should not stand.

In ruling on a motion for a new trial, "the district court has the duty . . . to weigh the evidence as [the court] saw it, and to set aside the verdict of the jury, even though supported by substantial evidence, where, in [the court's] conscientious opinion, the verdict is contrary to the clear weight of the evidence." *Id.* at 729 (citation omitted); *see also Landes Construction Co., Inc. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987).  Thus, in undertaking this review, the Court may weigh the evidence and assess the credibility of witnesses, and need not view the evidence from the perspective most favorable to the prevailing party.  *Landes*, 833 F.2d at 1371.  But "the court is not justified in granting a new trial 'merely because it might have come to a different result from that reached by the jury.'" *Roy v. Volkswagen of Am., Inc.*, 896 F.2d 1174, 1176 (9th Cir. 1990) (citation omitted).

In support of their argument, Plaintiffs assert that the evidence adduced at trial showed that while "Plaintiffs initially 'resisted' the defendants' unclear statements (not orders) regarding the turn-over of their camera . . . [a]fter plaintiffs' camera was taken from them, there was no evidence that plaintiffs resisted, that anything was asked of them, that they were armed, that they were attempting to flee the scene, that they posed an immediate threat to anyone, or were threatening to commit further crimes, etc."  Mot. at 7.  Plaintiffs further argue that even if there was a need to handcuff Plaintiffs, there was no need to do so by force and that the force used in this case violated San Francisco Police Department General Order 5.01 regarding use of force, in that no order, warnings, or

1  instructions were given to Plaintiffs after their camera was seized. *Id*. at 8.

2        Defendants, however, maintain that the verdict is not against the weight of evidence because Plaintiffs refused to turn over evidence, physically fought with the Officers, and resisted the Officers' attempts to arrest them. Opp. at 7-8.

5        After carefully considering the parties' arguments and reviewing the evidence presented at trial, the Court agrees with Defendants that the evidence amply supports the jury's verdict that none of the Officers used excessive force against Plaintiffs.

8        With respect to Sgt. Haymond, the evidence presented at trial failed to support Plaintiffs' excessive force claims. As to Kimberly Luong's allegation that Sgt. Haymond stepped on her ankle, Kimberly testified that she was unable to see her ankle from the position she was in and never actually saw Sgt. Haymond step on her ankle; rather, she was only able to see him move his foot over. Nor did the video evidence show Sgt. Haymond's foot in relation to Kimberly. Nothing about Sgt. Haymond's stance or positioning as seen in the video conclusively established that he stepped on Kimberly's ankle. Particularly, Ofc. Cuidad is shown in the video as being in the same stance as Sgt. Haymond, which suggests that Sgt. Haymond did not position himself to intentionally step on Kimberly's ankle. Further, Defendants presented testimony that the marks on Kimberly's ankle were inconsistent with injuries from a boot and more consistent with injuries from a take-down of a resisting individual.

19        As to Kimberly's testimony that she was pushed down, Defendants presented evidence that because she was resisting the Officers' efforts to control her, it was not unreasonable for Sgt. Haymond to push her. In fact, Kimberly testified that even after she was pushed, she tried to get up again. Taking the foregoing testimony and evidence into account, the Court cannot find that the jury's finding that Sgt. Haymond did not use excessive force against Kimberly Luong was against the clear weight of evidence.

25        With respect to Vicky Luong's claim that Sgt. Haymond threw her across the alley, her testimony that she did not know who threw her combined with Defendants' evidence that the CAD audio synced with the video showed that Sgt. Haymond was not near Vicky when Ofc. Moriyama

4

grabbed the video camera provided a sufficient basis to support the jury's finding as to Sgt. Haymond.      As to Kimberly Luong's claim against Ofc. Chea, the tesimony and evidence presented at trial demonstrated that his use of force was reasonable.  While Ofc. Chea took Kimberly to the ground to get her under control and applied his knee to her neck, handcuffed her, and picked her up, Defendants presented persuasive testimony that these were trained techniques for detaining a suspect who was physically resisting arrest.  Further, Kimberly testified that she was unsure whether Ofc. Chea applied his knee or his hand when he pushed her to the ground.  Kimberly also testified that Ofc. Chea pushed her after she ran across the alley to her sister when the officers were attempting to restrain Vicky, but that the initial push did not cause her to fall down or to take a step backward.

      The evidence also supported the jury's verdict as to Vicky Luong's excessive force claim against Ofc. Moriyama.  Vicky testified that she did not know which officer used force against her because she could not see the officer.  She presumed it was Ofc. Moriyama because he was the officer who had his hands on the side of her arm and was tugging at her clothes.  But even assuming it was Ofc. Moriyama, Vicky testified that the officer only put his hands on her arm, tugged on her shirt, and shook her during the struggle for the video camera.  Vicky testified that as Ofc. Moriyama approached her, she attempted to scoot away, but he grabbed her and dragged her on her knees.  There was no persuasive evidence presented that Ofc. Moriyama threw or dragged her across the alley.  Thus, the jury had a firm basis to find that Vicky had failed to establish that Ofc. Moriyama used unreasonable force against her.

      More generally, with respect to the circumstances to which the Officers were responding, at trial the Officers testified that they were alerted to a reported stabbing and had learned on the way to the scene that someone in the suspect's house had to tried to wash bloody clothing.  Officers Chea and Moriyama both testified that when they arrived at the scene, they saw blood on the ground, stairwell, and banister.

      Each of the Officers also testified that Plaintiffs refused to turn over the video camera and that both Vicky and Kimberly physically resisted the Officers' attempts to seize the camera and,

immediately thereafter, their attempt to arrest Plaintiffs. Contrary to Plaintiffs' assertion, the amount of force the Officers used was necessitated by Plaintiffs' resistance and used to control Plaintiffs so that the Officers could handcuff them. In particular, Kimberly Luong testified that she approached Ofc. Moriyama from behind and "struck" or "touched" him on the back. The videotape from the anonymous neighbor demonstrated that Kimberly Luong ran toward the Officers while they were handcuffing Vicky Luong and struggled against Officer Chea's attempts to handcuff her. Officer Moriyama also testified that Vicky Luong backed away from him when he tried to handcuff her. Likewise, the video from the local news station demonstrated that Vicky Luong continued to physically struggle when the Officers were escorting her to the police wagon.

Taken together, this evidence supported the jury's verdict for the Officers on the excessive force claims. The Court therefore finds no basis to undo the verdict or grant a new trial.

**B.     Plaintiffs Charge that Officer Moriyama Gave Perjurious Testimony**

Plaintiffs next urge the Court to grant a new trial because Plaintiffs contend Ofc. Moriyama gave perjurious testimony. Mot. at 8. Specifically, Plaintiffs argue that during cross-examination Ofc. Moriyama authenticated his November 14, 2010 incident report in which he stated that "Officer Garay told me that the camera V. Luong was holding was originally with Kimberly Luong who was inside 1 Himmelmann at the time they made entry." *Id*. at 8-9. Plaintiffs assert that Ofc. Moriyama also confirmed that he "informed V. Luong that her camera was going to be seized as evidence and that we will issue her a property receipt." *Id*. at 9. Plaintiffs contend that, "[a]fter plaintiffs' video was played before the jury and with respect to both of the aforementioned quotes by Moriyama, he testified that he believed these written statements were accurate at the time of the preparation of his report. Plaintiffs' video and Moriyama confirmed those statements were never made at the time noted by Moriyama in his report." *Id*.

In response, Defendants argue that on cross-examination Ofc. Moriyama conceded that after watching the videotape he must have been mistaken about the statements made in his incident report. Opp. at 8-9. Thus, Defendants argue that Ofc. Moriyama's statement and the conflicting video evidence was not perjurious; rather, it presented a credibility issue for the jury to consider. *Id*. (citing

6

*Nicholson v. Rushen*, 767 F.2d 1426 (9th Cir. 1985)).

The Court agrees with Defendants. Plaintiffs had ample opportunity to question Officer Moriyama on cross-examination about the statements made in his report and any conflict between those statements, his testimony, and the video evidence. That is precisely the purpose of cross-examination. It was the role of the jury to consider any discrepancies and Ofc. Moriyama's proffered explanation for them and take that into consideration when determining the amount of weight to give to his testimony. Plaintiffs' argument is therefore unavailing.

Plaintiffs next contend that the Court's dismissal at summary judgment of Plaintiff's First Amendment claim, its finding that the arrest of Plaintiffs was lawful, and its finding that Ofc. Moriyama had reasonable suspicion or probable cause to demand and/or take Plaintiffs' camera containing potential evidence were erroneous because they were based on Ofc. Moriyama's deposition testimony that he relied on the police radio broadcast and his conversation with Officer Garay as stated in his incident report. Mot. at 9. Plaintiffs argue that the video demonstrates that no conversation took place between Ofc. Moriyama and Ofc. Garay while Ofc. Graray was escorting George Luong from the alley. *Id*. Plaintiffs further argue that the CAD Log of the police radio broadcast confirms no information that family members were inside at the time of the officers' entry into the Luong residence. *Id*. Thus, Plaintiffs argue that "Moriyama's claimed sources of information and his earlier representations to this Court were, respectively, non-existent and false." *Id*.

However, as Defendants point out, Plaintiffs have failed to cite any authority – and the Court has found none – holding that a motion for a new trial is the proper procedure to challenge a summary judgment ruling. The Court therefore rejects Plaintiffs' argument on this basis.

In sum, the Court finds no basis to support a new trial based on Ofc. Moriyama's testimony.

**C.     Plaintiffs' Challenges to the Jury Instructions**

Plaintiffs next take issue with the jury instructions, arguing that instructions Nos. 11 and 17 were misleading and prejudicial and the Court incorrectly rejected thirteen of Plaintiffs' proposed instructions. Mot. at 10. As stated below, the Court finds no error.

7

1. Jury Instructions 11 and 17

Plaintiffs argue that Jury Instructions Nos. 11 and 17 were misleading and prejudicial. Mot. at 10.

Instruction No. 11 read:

### THE OFFICERS' SEIZURE OF THE CAMERA FROM PLAINTIFFS

The officers' seizure of the videocamera is not in issue. The officers had authority to seize the camera based on their belief that it may contain evidence of George Luong's crime.

Dkt. No. 80 at 11. Plaintiffs argue that the instruction was prejudicial because it contained "the word 'seizure' three times while referring to plaintiffs' brother's 'crime,'" and because it "'tied-in' an earlier presumed crime to plaintiffs by virtue or their brother's alleged conduct . . . ." Mot. at 11. Plaintiff also argues that the instruction was prejudicial because by using the term "seizure," the instruction "assumed the legitimacy of the force used to take plaintiffs' camera, while more importantly, tainting to plaintiffs' prejudice, the jury with the force used following the camera seizure." *Id.*

Defendants respond that Plaintiffs have failed to articulate why the instruction is misleading. Opp. at 12. To the extent that Plaintiffs object to the use of the word "seizure," Defendants argue that the word could have equally prejudiced Defendants by exaggerating the amount of force used to obtain the camera. *Id.* Defendants further contend that the instruction was not prejudicial but, instead, was necessary so that the jury would not confuse the excessive force inquiry with a First Amendment inquiry which the Court had previously ruled was not at issue in the case.

The Court agrees with Defendants. Consistent with the Court's summary judgment order, Instruction No. 11 informs the jury that the officers' act of seizing the video camera in connection with their arrest of George Luong was not before them. Moreover, as Defendants point out, the term "seizure" and "seize" are neutral legal terms and do not have a connotation that prejudices Plaintiffs. Further, Plaintiffs' counsel used the term "seizure" repeatedly during his direct examination of Plaintiffs when discussing the Officers' attempts to confiscate the video camera. The Court therefore

1 rejects Plaintiffs' argument.

2 Plaintiffs also argue Instruction No. 17 was unfairly prejudicial. Instruction No 17 read:

### UNREASONABLE SEIZURE OF PERSON - EXCESSIVE FORCE

In general, a seizure of a person is unreasonable under the Fourth Amendment if a police officer uses excessive force in making a lawful arrest or in defending himself. Thus, in order to prove an unreasonable seizure in this case, the plaintiff must prove by a preponderance of the evidence that the officers used excessive force when arresting plaintiffs, defending themselves, and seizing the video camera.

Under the Fourth Amendment, a police officer may only use such force as is "objectively reasonable" under all of the circumstances. In other words, you must judge the reasonableness of a particular use of force from the perspective of a reasonable officer on the scene and not with the 20/20 vision of hindsight. In determining whether the officers used excessive force in this case, consider all of the circumstances known to the officers on the scene, including:

1. The severity of the crime or other circumstances to which the officers were responding;

2. Whether the plaintiffs posed an immediate threat to the safety of the officers or to others;

3. Whether the plaintiffs were actively resisting arrest or attempting to evade arrest by flight;

4. The amount of time and any changing circumstances during which the officers had to determine the type and amount of force that appeared to be necessary;

5. The type and amount of force used;

6. The availability of alternative methods to take the plaintiffs into custody or to subdue the plaintiffs;

7. Whether the plaintiffs were resisting lawful attempts to seize evidence.

Dkt. No. 80 at 17. This instruction tracks Ninth Circuit Model Jury Instruction 9.22 entitled "Particular Rights – Fourth Amendment – Unreasonable Seizure of a Person – Excessive (Deadly and Nondeadly) Force," except for the inclusion of specific facts from the case in ¶ 1 and factor No. 7. Plaintiffs argue that the inclusion of such facts was unfairly prejudicial. Mot. at 11. In particular, Plaintiffs argue that factor No. 7 "unfairly afforded defendants a factor not authorized under the law by the use of the words 'lawful attempts' and 'seize evidence,' while putting upon

9

plaintiffs the burden to justify their presumed resistance where there was no clear order given." *Id*. Plaintiffs contend that Model Instruction 9.22 should not have been amended. *Id*.

Defendants respond that Plaintiffs have failed to cite any authority in support of their argument that factor No. 7 should not have been included. Opp. at 12. As Defendants point out, during trial, Plaintiffs claimed a legal right to withhold the video camera, thereby necessitating the inclusion of this language in Instruction No. 17 for the jury to understand that the officers were allowed to use force to obtain the camera. As with Instruction No. 11, Instruction No. 17 contained facts consistent with the Court's summary judgment ruling regarding seizure of the video camera and the Court is unpersuaded by Plaintiffs' argument that this language was prejudicial to them.

The Court therefore finds no basis to grant a new trial based on Instructions Nos. 11 and 17.

2. <u>Plaintiffs' Proposed Instructions Nos. 1, 2, 3, 4, 5, 6, 7, 8, 11, 13, 14, 15, and 16</u>

Plaintiffs argue that the Court erroneously rejected Plaintiffs' Separate Proposed Jury Instructions Nos. 1, 2, 3, 4, 5, 6, 7, 8, 11, 13, 14, 15, and 16. Mot. at 12-14.

With respect to Plaintiffs' Proposed Instruction No. 1,[3] Plaintiffs argue that the Court's rejection of this instruction was prejudicial because "it precluded the jurors' considerations of any misrepresentations by the defendants, under oath . . . ." Mot. at 12. However, as Defendants correctly note, Plaintiffs' proposed instruction was not a neutral statement of law because it expressly referred to police officer credibility. Opp. at 10. The Court instructed the jury on witness credibility when it gave Ninth Circuit Model Instruction 1.11. The Court thus rejects Plaintiffs' argument.

As to Plaintiffs' Proposed Instruction No. 2,[4] although Plaintiffs argue that Model Ninth Circuit Jury Instruction 9.22 should have been given without amendment, Plaintiffs argue that the Court should have included each of the factors listed in Plaintiffs' Proposed Instruction No. 2 in the Instruction No. 17. Mot. at 12. For the reasons set forth above, the Court finds no error with

---

[3] Dkt. No. 50 at 41.

[4] Dkt. No. 50 at 43.

Instruction No. 17 and thus rejects Plaintiffs' argument.

Plaintiffs next argue that their Proposed Instruction No. 3,[5] entitled "Officer Credibility," should have been given. *Id.* at 12. As indicated above, the Court gave Model Instruction No. 1.11 regarding credibility of a witness, which was neutral and sufficient to instruct the jury on this topic.

Plaintiffs also argue that the Court should have given their Proposed Instruction No. 4,[6] entitled "Code of Silence." *Id.* However, as Defendants correctly point out, this instruction was not a statement of law. Again, the Court adequately instructed the jury regarding assessing witness credibility by giving Model Instruction 1.11.

As to Plaintiffs' Proposed Instruction No. 5,[7] Plaintiffs argue that the failure to give this instruction was unfairly prejudicial and mislead the jury because "it would have properly informed the jury that any or all defendants could ultimately be held liable to plaintiffs for denial of their constitutional rights so long as the defendants were integrally involved. . . . The failure to provide it to the jury mislead the jury into believing that plaintiffs needed to identify which officer did what to which plaintiff as urged by defendants during the course of trial." Mot. at 12. Plaintiffs also argue that Proposed Instruction No. 6,[8] entitled "Failure to Intervene/Prevent Excessive Force," should have been given to inform the jury that a failure to intervene in the presence of an officer during the course of a constitutional violation makes that non-intervening officer directly liable under 42 U.S.C. § 1983. *Id.* at 12-13.

Citing *Jones v. Williams*, 297 F.3d 930, 934-35 (9th Cir. 2002), Defendants counter that Plaintiffs' Proposed Instruction Nos. 5 and 6 misstated the law because individual liability requires individual participation in the constitutional violation. Opp. at 10-11. The Court agrees with Defendants and finds no error in rejecting these instructions.

---

[5] Dkt. No. 50 at 45.

[6] Dkt. No. 50 at 47.

[7] Dkt. No. 50 at 51.

[8] Dkt. No. 50 at 55.

11

With respect to Plaintiffs' Proposed Instruction No. 7,[9] entitled "Not Necessary to Show Intent to Deprive Constitutional Right," Plaintiffs argue that this instruction should have been given because it was consistent with Jury Instruction No. 16 regarding elements of a § 1983 claim. Mot. at 13. However, as Defendants point out, the proposed instruction was unnecessary and the Court adequately instructed the jury on the elements of a § 1983 claim by giving Model Instruction No. 9.2 and Model Instruction 9.22 regarding excessive force. Opp. at 11. The Court agrees with Defendants that Plaintiffs' Proposed Instruction No. 7 was unnecessary and thus rejecting it did not result in any prejudice.

In the same vein, Plaintiffs argue that the Court erred in not giving their Proposed Instruction No. 8[10] regarding intent. Mot. at 13. Again, the Court finds that Instruction No. 16 was sufficient to instruct the jury on the elements of a § 1983 claim, making this proposed instruction unnecessary.

Next, Plaintiffs argue that the Court's rejection of their Proposed Instruction No. 11,[11] entitled, "No Authority to Punish," was erroneous because "[f]ailing to provide this instruction kept from the jury a basic tenet of the law that was in issue, i.e., the need and/or appropriateness of the force used causing plaintiffs' physical injuries as confirmed by the evidence." Mot. at 14. However, the Court instructed the jury on the elements of excessive force by including all of the elements of Model Instruction No. 9.22 in Instruction No. 17. Plaintiffs' Proposed Instruction No. 11 was thus unnecessary.

Plaintiffs also argue that the Court erred in rejecting their Proposed Instructions No. 13,[12] entitled, "Use of Force/Warnings." Mot. at 14. Plaintiffs argue that the instruction would have provided additional criteria for the jury's consideration regarding the need and/or appropriateness

---

[9] Dkt. No. 50 at 56.

[10] Dkt. No. 50 at 58.

[11] Dkt. No. 50 at 64.

[12] Dkt. No. 50 at 68.

UNITED STATES DISTRICT COURT
For the Northern District of California

1  of the force used by defendants where no warnings or clear orders issued. *Id*. Defendants counter
2  that Plaintiffs' Proposed Instruction No. 13 misstates that law, in that warnings are not required
3  when less than deadly force is used, citing *Deorle v. Rutherford*, 272 F.3d 1272 (9th Cir. 2001), in
4  support. Opp. at 11. The Court agrees with Defendants.

5  With respect to Plaintiffs' Proposed Instruction No. 14,[13] entitled, "Each Use of Force Must
6  be Justified Separately," Plaintiffs argue that the jury's failure to be instructed that each act is to be
7  judged separately was prejudicial to their claims. Mot. at 14. However, the Court agrees with
8  Defendants that the instruction did not fit the facts of this case, overstated the law, and was
9  unnecessary given that the Court instructed the jury on the factors to consider when assessing
10 excessive force.

11 As to Plaintiffs' Proposed Instruction No. 15,[14] entitled, "Use of Force - Compelling
12 Interests Required," Plaintiffs argue that this instruction "would have . . . clearly instructed the jury
13 of the standard by which its decision was to be made." Mot. at 14. Again, the Court instructed the
14 jury regarding the elements to consider when assessing whether excessive force was used in
15 Instruction No. 17. Plaintiffs' Proposed Instruction No. 15 was thus unnecessary.

16 Finally, Plaintiffs argue that the Court erred in not giving their Proposed Instruction No.
17 16,[15] entitled "Liability of a Public Entity." Mot. at 14. They argue that the failure to give this
18 instruction was prejudicial because the City and County of San Francisco was the employer of the
19 named defendants and a defendant in this case. *Id*. Defendants respond that Plaintiffs' Proposed
20 Instruction No. 16 was unnecessary because the Court instructed the jury that the Defendants acted
21 under color of state law. Opp. at 12. The Court agrees with Defendants that Plaintiffs' Proposed
22 Instruction No. 16 was unnecessary.

23 In sum, the Court finds no basis supporting a new trial based on Plaintiffs' objections to the

---

[13] Dkt. No. 50 at 70.

[14] Dkt. No. 50 at 72.

[15] Dkt. No. 50 at 74.

jury instructions given or previously rejected by the Court.

**D.     Plaintiffs' Challenges to the Court's Evidentiary Rulings**

Plaintiffs also argue that a new trial is warranted because the Court erred in several evidentiary rulings. "A new trial is only warranted on the basis of an incorrect evidentiary ruling if the ruling substantially prejudiced a party." *United States v. 99.66 Acres of Land*, 970 F.2d 651, 658 (9th Cir. 1992). This requires the movant to demonstrate that, "more probably than not," the evidentiary error "tainted the verdict." *Harper v. City of Los Angeles*, 533 F.3d 1010, 1030 (9th Cir. 2008). A harmless error by a district court in an evidentiary ruling does not justify disturbing a jury's verdict. *Merrick v. Farmers Ins. Group*, 892 F.2d 1434, 1439 (9th Cir. 1990) (citations omitted).

    1.     Exhibit 12

Plaintiffs contend that the Court erred in refusing to permit introduction into evidence of Ex. 12, which included Chapter 14 of Peace Officer Standards and Training (POST) Learning Domain 33 relating to restraint devices. Mot. at 14. Plaintiffs argue that this ruling was prejudicial because the process and procedure of handcuffing was at issue and Domain 33 discusses the proper procedures for handcuffing and controlling a subject, including use of verbal commands, as well as pictures which Plaintiffs contend were probative on the issues of the constitutionality of the force used on Plaintiffs. *Id*. at 15. Plaintiffs argue that Ex. 12 also included pertinent portions of POST Learning Domain 20 "Use of Force" with graphic descriptions of when possible force options are to be utilized given the subject's actions. *Id*. They argue that although they were able to cross-examine Defendants' expert, Don Cameron, on the subject, failing to provide the jury with the chart/matrix to which he testified was prejudicial. *Id*.

Defendants counter that Plaintiffs attempted to introduce the POST training materials to show the proper methods for arresting suspects – *i.e.*, for the truth of the matter asserted – and thus the Court properly excluded them as inadmissible hearsay under 802. Opp. at 13-14. Defendants also argue that it would have been more prejudicial than probative to present extensive training materials to the jury, and thus the Court properly denied their introduction into evidence under FRE

14

1   403 and 703. *Id*. at 14. Defendants argue that, in any event, Plaintiffs were not prejudiced because
2   they had the opportunity to question their expert about the POST learning domains and to cross-
3   examine and impeach Defendants' police practices expert, Mr. Cameron, with them.

   Defendants are correct. During trial, Plaintiffs failed to cite a proper hearsay exception to
permit introduction of the POST training materials into evidence, and even if a proper exception
existed, as Defendants pointed out, the probative value of such materials was substantially
outweighed by the danger of unfair prejudice. The Court therefore rejects Plaintiffs' argument.

### 2. Plaintiffs' Citations

Plaintiffs next argue that the Court erred when it refused to admit Plaintiffs' citations into evidence, which included the charge of violation of California Penal Code section 241(c) on Kimberly Luong's citation. Mot. at 15. Plaintiffs argue that this evidence was probative of Kimberly Luong's claim that she suffered emotional distress as a result of the officers' false charges against her, thereby prejudicing her ability to prove her claim. *Id*. However, as Defendants point out, in its summary judgment Order, the Court ruled that the arrests of Plaintiffs were lawful, making the citations irrelevant. *See* Dkt. No. 35 at 11-12. Further, as the Court explained in its Order on the parties' motions in limine, referencing the citations would confuse the jury and unfairly prejudice Defendants. *See* Dkt. No. 63 at 6. The Court therefore rejects Plaintiffs' argument that this ruling was in error.

### 3. Evidence Relating to the 911 Call

In their Motion in Limine No. 1, Plaintiffs moved to exclude any evidence of the circumstances surrounding the arrest of George Luong, including any reference to the details of the 911 calls regarding George Luong and/or the observations of the initial arriving officers at Plaintiffs' home before his arrest. Dkt. No. 63 at 1-2. The Court granted Plaintiffs' motion in part and denied it in part, ruling:

> Defendants may present evidence regarding facts *known* to the Defendant Officers at the time of their interaction with Plaintiffs, such as the nature of the 9-1-1 call (*i.e.*, the crime that was reported and to which they were responding) and any observations by the first-responding officers (*i.e.*, those who arrested George Luong) that were actually conveyed to the Defendant Officers. Any information or observations of the first-responding officers that was not conveyed to the Defendant

1   Officers at the time of their interaction with Plaintiff shall be excluded.
2   Dkt. No. 63 at 2.
3   As Defendants argued in their opposition brief to Plaintiff's Motion in Limine no. 1, the
responding officers' knowledge and state of mind are relevant and admissible to determine the
propriety of the officers' actions in effecting arrest. *See Miller v. Clark Cnty.*, 340 F.3d 959, 965 &
n.9 (9th Cir. 2003). In this case, the Defendant Officers' knowledge of the 911 call and information
relating to the nature of the crime they were investigating were relevant to the jury's consideration
of whether the amount of force the Officers used was unreasonable given the circumstances known
to them. *See Blanford v. Sacramento Cnty.*, 406 F.3d 1110, 1116 (9th Cir. 2005); *Smith v. City of
Hemet*, 394 F.3d 689, 702 (9th Cir. 2005). At trial, each of the Officers testified that they listened
to the their radio when en route to Himmelmann Place. The Court thus rejects Plaintiffs' argument
that Defendants should have been precluded from eliciting such evidence or that it was unfairly
prejudicial.

**E.     Plaintiffs' Charge that the Court Failed to Notify Counsel of a Jury Question**

Finally, Plaintiffs charge that the Court committed plain error when the jury submitted a
question regarding the definition of "reckless disregard" and – according to Plaintiffs – the Court
"presumably responded directly to the jury without notifying either counsel." Mot. at 17. Plaintiffs
argue that "[i]t is clear from the jurors' question that it related to K. Luong's claim for intentional
infliction of emotional distress," and "Plaintiffs' substantive claim for intentional infliction of
emotional distress was substantively addressed by the Court without communication to the
lawyers." Plaintiffs thus assert that "[w]ithout question, their rights under this claim were
substantively addressed in an unknown fashion creating a miscarriage of substantive justice,"
thereby denying Plaintiffs' their due process rights to a fair trial.

As Defendants point out, Plaintiffs cite no evidence in support of their allegation that the
Court communicated with the jury in response to their question. In fact, when the jury submitted
their written question to the courtroom deputy, counsel was notified that the jury had submitted a
question and was instructed to return to Court so that counsel could address the question in court,

after which the Court could decide how to proceed. However, in the interim, the jury foreperson notified the courtroom deputy that it had resolved the question submitted and therefore withdrew it. Counsel was notified of this development when they reconvened in Court. Plaintiffs' erroneous accusation that the Court had any communication with the jury outside the presence of counsel amounts to nothing more than wild speculation and conjecture and does not provide a basis for granting a new trial.

## IV.  CONCLUSION

For the reasons set forth above, the Court **DENIES** Plaintiffs' Motion for a New Trial (Dkt. No. 86).

**IT IS SO ORDERED.**

Dated: May 29, 2013

_____
Maria-Elena James
United States Magistrate Judge